# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH CREE MEDICINE, JR.,<br>Defendant. | **CR 25-17-GF-BMM**<br><br><br>**ORDER ON DEFENDANT'S MOTION TO SUPPRESS** |

## INTRODUCTION

A grand jury indicted Joseph Cree Medicine Jr. ("Cree Medicine") with one count of involuntary manslaughter in violation of 18 U.S.C. §§ 1153(a) and 1112. (Doc. 1.) It remains undisputed that Cree Medicine was driving the car when it left the road and that the passenger, John Doe, was killed after being ejected from the car. (Doc. 23 at 6.) Cree Medicine seeks to suppress two blood draws that he alleges were taken in violation of his Fourth Amendment rights. (Doc. 22.) Cree Medicine also seeks to suppress statements made to Blackfeet Law Enforcement Service ("BLES") officers in an alleged violation of his right against self-incrimination and right to counsel in violation of the Fifth Amendment. (Doc. 22.)

The Government concedes that Cree Medicine's statements after he invoked

1

his right to counsel should be excluded. (Doc. 31 at 1-2.) The Government also concedes that Cree Medicine's second blood draw that was performed at the request of BLES officers should be excluded. (*Id*.) The Government contends that Cree Medicine's medical records and blood alcohol content from the first blood draw were obtained lawfully and should not be suppressed.  The Court held a hearing on May 27, 2025. (Doc. 38.)

## FACTUAL BACKGROUND

I.    **Cree Medicine's statements after having invoked the right to counsel should be suppressed.**

Cree Medicine crashed and rolled his car in the ditch after overcorrecting on icy roads. Cree Medicine and his passenger, John Doe, were taken to the hospital after the crash. BLES Officer Skunkcap ("Officer Skunkcap") went to the hospital to interview Cree Medicine. (Def. Ex. #1.) Officer Skunkcap read Cree Medicine his *Miranda* warnings advising him of his right to counsel and right to remain silent. (*Id*. at 2:38.)

Officer Skunkcap asked Cree Medicine to recite the events of the crash. (*Id*. at 2:57.) Cree Medcine recounted that he attempted to pass a car, hit black ice, and spun out of control. (*Id*. at 2:59.) Officer Skunkcap asked if Cree Medicine was "driving correct." (*Id*. at 3:10.) Cree Medicine responded "yes." (*Id*. at 3:12) Officer Skunkcap asked who was sitting on the passenger side. Cree Medicine responded

2

that his cousin was sitting with him. Cree Medicine asked about his *Miranda* rights and asserted his right to counsel. (*Id*. at 3:26.)

Officer Skunkcap told Cree Medicine that BLES would be requesting that blood be drawn from him and asked if alcohol would show up in his blood. (*Id*. at 3:34.) Cree Medicine responded "no." (*Id*. at 3:38) Officer Skunkcap grabbed an implied consent form and read it to Cree Medicine. (*Id*. at 4:04.) Cree Medicine made unsolicited statements as Officer Skunkcap filled out the implied consent form for Cree Medicine. Cree Medicine also recited more information about the crash.

BIA Agent Still Smoking ("Agent Still Smoking") interviewed Cree Medicine a second time. (Def. Ex. #2; Doc. 23, Ex. E.) The beginning of the recording is mostly inaudible, and it does not appear law enforcement were interviewing Cree Medicine. Cree Medicine asked, "are you recording," and received no response. (Def. Ex. #2 at 1:03.) Cree Medicine made several unsolicited statements, including the following:

> "they come in there and he said, just give me Miranda rights, and I was like, "yeah, give him some blood. said, go ahead, man. You got nothing to hide from me said, yeah, I was drinking. Fuck. Got hit black ice, when going out to Heart Butte. It was my fault, cause I shouldn't have passed it."
> (*Id*. at 2:35.)

Another person entered the room and started to explain the officers' presence. The Court assumes BIA Agent Still Smoking entered the room.

Cree Medicine announced, "I want a lawyer," before Agent Still Smoking

read Cree Medicine his *Miranda* warnings. (*Id*. at 3:22.) Agent Still Smoking handed Cree Medicine an acknowledge of *Miranda* rights form and said he would go over it with Cree Medicine. Cree Medicine contended that he was "already asked these questions." (*Id*. at 3:44.) Agent Still Smoking read Cree Medicine the acknowledgement of rights form and advised Cree Medicine of the *Miranda* warnings. (*Id*. at 3:47.) Agent Still Smoking asked, "are you willing to answer some questions?" Cree Medicine responded, "no." (*Id*. at 4:19.) Agent Still Smoking continued and asked Cree Medicine to provide his personal information. Cree Medicine responded, "I thought I gave it to this guy already, why do I have to do it twice." (*Id*. at 4:38.) Cree Medicine eventually conceded and signed the understanding of rights form and spoke with law enforcement about the incident at issue.

## II.    Cree Medicine's First Blood Draw.

Blackfeet Community Hospital ("BCH") staff conducted a blood draw on Cree Medicine when he first arrived at the hospital. (Doc. 23 at 29.) Agent Still Smoking requested a copy of the blood draw citing the "law enforcement exception," under 5 U.S.C. § 552a (b)(7). (Doc. 23 at 52.)  BCH staff complied. Cree Medicine's blood alcohol content ("BAC") is listed as 0.137 grams/100 milliliters. (Doc. 23 at 29.)

### III.   Cree Medicine's Second BLES requested Blood Draw

Officer Skunkcap notified Cree Medicine that BLES officer's would request that BCH conduct another blood draw after Cree Medicine had invoked his right to counsel. (Def. Ex. #1 at 3:34.) Cree Medicine responded, "yeah they can." (*Id*.) Officer Skunkcap asked whether Cree Medicine believed alcohol will show up in the blood test results. (*Id*.) Cree Medicine responded "no." (*Id*. at 3:40.)

Officer Skunkcap read Cree Medicine the implied consent form for blood draws. (*Id*. at 4:00; *See* Doc. 23 at 39.) Officer Skunkcap told Cree Medicine that "some things don't apply to you, ready?" (*Id*. at 4:10.) Cree Medicine does not respond. Officer Skunkcap informed Cree Medicine that he was under arrest and that Officer Skunkcap had probable cause to believe that Cree Medicine had been operating a car while under the influence of alcohol and/or drugs. (*Id*. at 4:20-6:43.)

Officer Skunkcap explained the consequences of refusing to test but did not explain Cree Medicine's right to refuse the test. (*Id*.) Officer Skunkcap stated "we are not doing the breath test, so we are going doing the blood test, ok? So you won't be doing that part." (*Id*. at 6:45-6:50.) Officer Skunkcap further explained that BLES requires a blood test after "any accidents." (*Id*. at 7:15-7:22.) Officer Skunkcap filled out the implied consent form and checked the box indicating that Cree Medicine agreed to the blood draw. (*Id*. at 8:00-8:20; *See i.e.* Doc. 23 at 39.)

## LEGAL STANDARD

The Fourth Amendment guards the "right of the people to be secure in their persons . . . against unreasonable searches" and provides that "no Warrants shall issue, but upon probable cause." A warrant is typically required unless there an exception to the warrant requirements apply. *Id.* (internal quotations and citations omitted.) The exigent circumstances exception renders the needs of law enforcement so compelling that a warrantless search is objectively reasonable. *Missouri v. McNeely*, 569 U.S. 141, 148 (2013)

"To invoke the protections of the Fourth Amendment, [a defendant] must show he had a legitimate expectation of privacy." *United States v. Nerber*, 222 F.3d 597, 599 (9th Cir. 2000) (quotations omitted). To establish a legitimate expectation of privacy, a defendant must demonstrate that he had a subjective expectation of privacy, and that that subjective expectation was "one that society is prepared to recognize as reasonable." *Id.* (quotations omitted).

"[A]n invasion of bodily integrity implicates an individual's "most personal and deep-rooted expectations of privacy." *McNeely* at 148. A blood draw is a "search" of the person. *Mitchell v. Wisconsin*, 588 U.S. 840, 849 (2019). The U.S. Supreme Court has held that a person possesses a privacy interest in their blood for purposes of the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757 (1966).

When an officer seeks to gain access to information that a person expects to remain private, a court may look to the totality of the circumstances to determine if

the exigency exception should apply. *McNeely* at 151. A defendant has the ultimate

burden of proof on a Fourth Amendment motion to suppress. *United States v.*

*Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005).

## ANALYSIS

**I.     Cree Medicine's statements after invoking the right to counsel should be suppressed.**

Cree Medicine asserts that he properly invoked his right to counsel by saying

"I'm gonna say I'll just talk to a lawyer then," after being read his *Miranda* warnings.

(Doc. 23 at 22.) The Government concedes that anything said by Cree Medicine after

invoking his right to counsel should be excluded. The Court agrees and will exclude

any statements made after 3:26 in Defendant's Exhibit #1 and in Defendants Exhibit

B (transcript of video) after 3:26.

Agent Still Smoking interviewed Cree Medicine a second time in the same

evening. (Def. Ex. #2; Doc. 23, Ex. E.) Cree Medicine argues that the statements in

the second interview should be suppressed. (Doc. 23 at 23-25.) The Government

does not address the second interview.

The Court determines that Cree Medicines statements in second interview

should be suppressed. Cree Medicine clearly announced, "I want a lawyer," before

Agent Still Smoking read Cree Medicine his *Miranda* warnings. (*Id*. at 3:22.) Cree

Medicine contended that he was "already asked these questions." (*Id*. at 3:44.) Agent

Still Smoking ignored Cree Medicine. Agent Still Smoking continued to read Cree

Medicine the form and advised Cree Medicine of his rights under *Miranda*. (*Id*. at

3:47.) Agent Still Smoking asked, "are you willing to answer some questions?" Cree

Medicine responded, "no."

Agent Still Smoking again ignored Cree Medicine's assertions to remain

silent. Agent Still Smoking continued to ask Cree Medicine to provide his personal

information. Cree Medicine responded, "I thought I gave it to this guy already, why

do I have to do it twice." (*Id*. at 4:38.) Cree Medicine's voice is slurred, and he

appeared to be under the influence of pain medicine. Cree Medicine eventually

conceded and signed the understanding of rights form and spoke with law

enforcement. The circumstantiates surrounding the second interview weigh in favor

of suppressing Cree Medicine's statements.

## II.    The results from Cree Medicine's first blood draw should not be suppressed under these circumstances.

The Government notes that BCH staff conducted the first blood draw as a part

of routine medical care after a car accident. The Government argues that it may

obtain information about Cree Medicine's blood without a warrant through an

exception to the Privacy Act, 5 U.S.C. § 552a(b)(7). Cree Medicine contends that he

seeks to suppress evidence to suppress evidence based on a violation of his Fourth

Amendment right to be from unreasonable searches rather than a potential HIPPA

violation. (Doc. 36 at 5.) Cree Medicine alleges that the Government violated the

Cree Medicine's Fourth Amendment rights, and no exception applies. (*Id*. at 6.) Cree

Medicine further argues that the Government attempted to circumvent the Fourth

Amendment search warrant requirements by requesting his first blood draw results

by way of investigative demand.

Cree Medicine agrees that the Blackfeet Community Hospital conducted the

first blood draw as a routine part of medical care and not for law enforcement

reasons. Cree Medicine contends that no exception would allow the Government to

access Cree Medicine's medical records. The Court disagrees. The Government cites

regulations that highlight two methods to obtain medical records apparently without

a warrant. (Doc. 31 at 4-5.) The Government argues that these two requirements

support the FBI's request for Cree Medicine's medical records and to access Cree

Medicine's BAC at the time he first arrived at the hospital. (*Id*.) The Government

does not address the letter sent by Agent Still Smoking requesting the results from

the first blood draw. The Court does not address the lawfulness of the requests sent

by Agent Still Smoking to BCH staff.

The Government cites no case that supports a warrantless search of Cree

Medicine's medical records. The Government's relies instead on an "investigative

demand" letter sent by the FBI to obtain hospital records. (Doc. 31 at 5.) The

Government cites to a District of Maryland case for the proposition that a hospital

drawing a defendant's blood does not implicate the Fourth Amendment because the hospital is not typically a government actor. (*Id*; citing *United States v. Elliott*, 676 F. Supp. 2d 431, 437 (D. Maryland. 2009)).

The District of Maryland found compelling the government's interest in obtaining medical records in certain circumstances. *United States v. Elliott*, 676 F. Supp. 2d 431, 439 (D. Maryland 2009). The District of Maryland specifically found that "the defendant's blood was drawn and analyzed in connection with her treatment at the hospital and not at the direction of a law enforcement officer[,]" and should not be suppressed. *Id*. The government in *Elliot* issued a law enforcement subpoena to the hospital for records.

The conduct is similar here. The Government provided no record of the "investigative demand" letter allegedly sent on April 15, 2025, and again on April 17,2025. (Doc. 31 at 5.) The Court assumes that such letter was "authorized" as required by law. *See* 45 C.F.R. § 164.512(f)(1)(ii)(C).  The Government relied on 45 C.F.R. § 164.512(f) to support the notion that the FBI letters were for law enforcement purposes. Section 164.512(f) provides as follows:

> A covered entity may disclose protected health information for a law enforcement purpose to a law enforcement official if the conditions in paragraphs (f)(1) through (f)(6) of this section are met, as applicable.
>
> (1) Permitted disclosures: Pursuant to process and as otherwise required by law. A covered entity may disclose protected health information:

(i) As required by law including laws that require the reporting of certain types of wounds or other physical injuries, except for laws subject to paragraph (b)(1)(ii) or (c)(1)(i) of this section; or

(ii) In compliance with and as limited by the relevant requirements of:

(A) A court order or court-ordered warrant, or a subpoena or summons issued by a judicial officer;

(B) A grand jury subpoena; or

(C) An administrative request for which response is required by law, including an administrative subpoena or summons, a civil or an authorized investigative demand, or similar process authorized under law, provided that:

> (1) The information sought is relevant and material to a legitimate law enforcement inquiry;
> (2) The request is specific and limited in scope to the extent reasonably practicable in light of the purpose for which the information is sought; and
> (3) De-identified information could not reasonably be used.

45 C.F.R. § 164.512(f)(1)

The government in *Elliott* issued a subpoena to the hospital that took the defendant's blood commanding that the medical records to be produced. *Elliott* at 433. The Clerk of the Court issued the subpoena to the hospital and the hospital complied and produced the blood results. *Id*. The District of Maryland found that the government failed to comply with the requirements under the "law enforcement exception." The District Court determined that the Clerk of Court was not a "judicial officer" as required by 45 C.F.R. § 164.512(f)(1)(ii)(A). The District of Maryland

nevertheless conducted a balancing test between the government's interest in obtaining medical information and a person's rights under the Fourth Amendment. *United States v. Elliott*, 676 F. Supp. 2d 431, 439 (D. Maryland 2009).

The Court finds that the narrow law enforcement exception applies here. The Court recognizes that in other circumstances a warrant may be required, and the holding applies specifically to the facts present in this case. The Court provides no analysis as to the requests by BLES officers and BIA agent to BCH to produce Cree Medicine's medical records. The FBI's requests seem to fall into the narrow category of the law enforcement exception of an "authorized investigative demand," and thus does not run afoul of HIPAA or the Fourth Amendment. *See* 45 C.F.R. § 164.512(f)(1)(ii)(C). BCH was not acting as a government agent and simply was responding to a lawful request by the FBI.

The Court recognizes that Cree Medicine suffered substantial injuries after the crash, and Cree Medicine's passenger, John Doe, is now deceased. The Government possessed a legitimate interest in obtaining medical records in connection with the crash to determine whether alcohol had been a contributing factor. The Government request also was narrowly limited in scope. The evidence of the first blood draw should not be suppressed.

### III.    Cree Medicine's Second Blood Draw

The Government concedes that it will not offer Cree Medicine's second blood

draw as evidence. The Court provides no analysis as to the request by Agent Still Smoking and the BIA. The Court will grant Cree Medicine's motion to suppress the second blood draw.

Accordingly, **IT IS HEREBY ORDERED** that Cree Medicine's Motion to Suppress (Doc. 22.) is **GRANTED in part** in accordance with the above order**.**

**DATED** this 11th day of June, 2025.


Brian Morris, Chief District Judge
United States District Court

13